**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MIKHAIL GOLOVERYA**<br>**v.**<br>**JL JAMISON, *et al.*** | **CIVIL ACTION**<br>**No. 26-4096** |

**Henry, J.** **August 4, 2026**

**MEMORANDUM**

Pending before me is a Petition for Writ of Habeas Corpus filed by Petitioner, Mikhail Goloverya, pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet'n"). Goloverya was born in Uralsk, Kazakh SSR (Kazakh Soviet Socialist Republic) under the Soviet Union, which is modern-day Kazakhstan (Pet'n at 1.) He entered the United States on August 1, 1998, on a non-immigrant visitor visa, and remained in the United States beyond the time permitted by the visa. ECF No. 3, Respondents' Opposition at 4 ("Oppo."). Goloverya's history here in the U.S. has been tumultuous, but relevant to the instant petition, he was detained by Immigration and Customs Enforcement ("ICE") in November of 2019 and was ordered removed to Russia on February 26, 2020. Pet'n at 2. He remained detained until September 1, 2020, when he was released on an Order of Supervision ("OSUP"). *Id.*, Ex. A at 2. The OSUP required Goloverya to, *inter alia*, make "good faith attempts at obtaining a travel document from the Russian Government." *Id*, Ex. A at 6.

On June 12, 2026, Goloverya reported to the ICE Field Office as required by his OSUP and was taken into custody. That same day, ICE served him with a Notice of Revocation of Release under 8 C.F.R. §241.13(i) based on a significant likelihood of his removal in the reasonably foreseeable future. Oppo. Ex. D. ICE also issued a Warrant of Removal/Deportation to Goloverya.

Oppo. Ex. E. An informal interview was conducted on June 15, 2026, at which time Goloverya stated that he had tried to obtain a Russian passport and citizenship in 2003 and 2006 but was refused. ECF 9, Respondents' Supplement Response ("Supp. Resp."); Ex. A.

Goloverya filed a petition for writ of habeas corpus on June 15, 2026, arguing that he is neither a flight risk nor a danger to the community, and that his removal cannot be said to be significantly likely in the reasonably foreseeable future, as he is stateless. Pet'n at 1-2. Therefore, he sought immediate release from detention. In opposition, Respondents argue that changed circumstances exist which have created a significant likelihood that Goloverya may be removed in the reasonably foreseeable future because "ICE has located a copy of Petitioner's birth certificate and Russian passport, which will allow it to apply for a travel document to Russia on Petitioner's behalf." Oppo. at 12.

ICE's ability to revoke an order of supervision and re-detain a noncitizen is governed by 8 C.F.R. § 241.13 and §241.4. A noncitizen on supervised release may be re-detained if they violate the conditions of their release or if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). The regulation indicates that "upon revocation of supervised release, it is the Government's burden to show a significant likelihood that the noncitizen may be removed." *Pan v. Oddo*, No. 25-265, 2025 WL 3960013, at *2 (W.D. Pa. Dec. 1, 2025) (collecting cases).

After a review of the pleadings and exhibits in this matter, I find that ICE's re-detention of Goloverya violated 8 C.F.R. § 241.13, as the Government cannot meet its burden to show a significant likelihood that Goloverya may be removed in the near future. Respondents state that changed circumstances exist because ICE "located" Goloverya's birth certificate and Russian

passport, thereby allowing it to apply for travel documents on his behalf. However, a review of the exhibits in this matter shows that nothing new has been "located" and there are in fact no changed circumstances.

The OSUP Revocation Worksheet that is part of the Notice of Revocation Release provided to Goloverya asks the preparing officer to list the OSUP violations and/or events that led to SLRRFF (significant likelihood of removal in the reasonably foreseeable future). Oppo., Ex. D at 3. In response to this question, the officer stated: "Copies of the subject's Russian passport and Russian birth certificate **are located** in the A-file (Alien Registration File)" *Id.* (emphasis added). There is no statement made by the officer that ICE had just recently obtained or located the identification documents so as to warrant an argument that there were changed circumstances. Rather, these documents were located in ICE's own file on Goloverya and had been in ICE's possession for years, according to Goloverya. ECF 10, Petitioner's Reply Brief ("Reply") at 2. Respondents cannot revoke Goloverya's OSUP on the basis of these documents, as they are not **new** evidence that suggests ICE will be able to obtain a travel document for Goloverya any time in the near future.

Further, the Notice of Deportable/Inadmissible Alien form dated June 12, 2026, that Respondents provided makes no reference to changed circumstances or recently obtained travel documents in its discussion of Goloverya. Rather, the form states that Goloverya was taken into custody and was "subject to President Trump's Executive Order titled 'Protecting the American People Against Invasion', signed on January 20, 2025." Oppo., Ex. A at 2. This statement calls into question the Government's real motivation for taking Goloverya into custody. Lastly, the Warrant of Removal/Deportation that ICE served upon Goloverya at the time of his arrest also makes no mention of changed circumstances or travel documents. Oppo., Ex. E.

All of this taken together leads to the inescapable conclusion that the Government cannot meet its burden of showing a significant likelihood of Goloverya's removal in the near future. Therefore, ICE's decision to re-detain him was in violation of 8 C.F.R. § 241.13, Goloverya's detention is unlawful and his release is appropriate.